STATE of Tennessee, By and Through
the TOWN OF SOUTH CARTHAGE,
TENNESSEE, Plaintiff/Appellant,

v.

Chester BARRETT, Defendant/Appellee.

Supreme Court of Tennessee,
at Nashville.

Sept. 28, 1992.

David Bass, Bass & Bass, Carthage, for
appellant.

Jacky O. Bellar, Carthage, for appellee.

## OPINION

ANDERSON, Justice.

The sole issue raised in this direct appeal
is whether municipal or "corporation"
courts may constitutionally exercise con-
current jurisdiction over state criminal of-
fenses committed within the municipality's
boundaries. The Smith County Circuit
Court held that the legislation (Tenn.Code
Ann. § 6–2–403) granting such concurrent
jurisdiction to the Municipal Court of the
Town of South Carthage violates the sepa-
ration of powers provisions of the Tennes-
see Constitution. We agree and affirm.

## BACKGROUND

The parties have stipulated the following
factual and procedural background:

On December 16, 1988, the defendant-
appellee, Chester Barrett, was found guilty
of the offenses of driving while intoxicated
(DUI), second offense, and driving without
a driver's license, by the municipal "corpo-
ration" court of the Town of South Car-
thage, Tennessee ("South Carthage").
Barrett was sentenced to 11 months and 29
days on the DUI conviction, all of which
was suspended except 45 days upon the
payment of a $500 fine and court costs, and
his driving privileges were suspended for

two years. On the driving without a license conviction, Barrett was fined $10.

Barrett appealed his DUI conviction to the Smith County Circuit Court, contending that the municipal court of South Carthage was without jurisdiction under the Tennessee Constitution to try his case, or any other case involving a violation of state law. In 1963, pursuant to Tenn.Code Ann. § 6–1–101 to § 6–1–406·(1985 & Supp.1991), South Carthage became an incorporated municipality of the state of Tennessee under a mayor-aldermanic charter. In 1985, pursuant to Tenn.Code Ann. § 16–18–101 (Supp.1991) (formerly § 17–1–501 (1980)), South Carthage passed an ordinance creating the office of municipal judge.

In accordance with Tenn.Code Ann. § 16–18–102 (Supp.1991) (formerly § 17–1–502 (1980)), the ordinance, in pertinent part[1] provided for the qualifications of the judge; that the judge would be appointed by and serve at the pleasure of the Board of Mayor and Aldermen; that the salary of the judge would be fixed by the Board of Mayor and Aldermen before his appointment, and not altered during his term of office; and that in the case of the judge's absence or disability, the mayor would either serve as the judge or designate someone to serve. The ordinance also provided that "[t]he municipal judge shall be vested with the judicial powers and functions of the Mayor or City recorder; [and] shall be subject to and have the authority as designated by the provisions of applicable laws

and the Town's charter governing the municipal court." This latter provision in the ordinance gave the South Carthage municipal judge concurrent jurisdiction with the general sessions court over violations of state criminal laws because, under the statutory powers of a municipality incorporated under a mayor-aldermanic charter,

[t]he recorder or other proper designated officer *shall be vested with concurrent jurisdiction with judges of the court of general sessions, in all cases of violation of the criminal laws of the state,* or of the ordinances of the municipality, within the limits of the municipality, but shall only receive the compensation fixed by ordinance, and pay all fees of office otherwise in the city treasury.

Tenn.Code Ann. § 6–2–403 (1985 & Supp. 1991) (repealed by 1991 Tenn.Pub. Acts ch. 154, § 1) (emphasis added).

The defendant argued that this grant of concurrent jurisdiction made the municipal court an inferior state court, whose judges must be elected in compliance with Article VI, § 4 of the Tennessee Constitution. The circuit court agreed, holding that the municipal court of South Carthage was an inferior court bound by Article VI, § 4 of the Tennessee Constitution. Accordingly, because the South Carthage municipal judge was not elected, the circuit court held that the municipal court was without jurisdiction to try this case, or other cases involving an exercise of state criminal court jurisdiction.

1. AN ORDINANCE PROVIDING FOR THE OFFICE OFFICE OF MUNICIPAL JUDGE OF THE TOWN OF SOUTH CARTHAGE, TENNESSEE, to set his duties and compensation and to repeal all ordinances in conflict.

BE IT ORDAINED THAT THERE IS hereby created the Office of Municipal Judge of the Town of South Carthage, Tennessee; that said municipal judge shall be vested with and have the following powers and duties:

Section I: The municipal judge shall be vested with the judicial powers and functions of the Mayor or City recorder; shall be subject to and have the authority as designated by the provisions of applicable laws and the Town's charter governing the municipal court.

Section II: The municipal judge shall be at least twenty five (25) years of age; shall be a

person of good moral character and learned in the law.

Section III: The municipal judge shall be appointed by a majority vote of the Board of Mayor and Aldermen and shall serve at the pleasure of the said Board of Mayor and Aldermen. Any vacancy in the office shall be filled for the unexpired term by the governing body.

....

Section VI: The salary of the municipal judge shall be fixed by the Board of Mayor and Aldermen prior to the appointment and shall not be altered during his term of office.

Section VII: In the event of the absence or disability of the municipal judge the mayor is designated to serve as judge; provided, however, the mayor may designate a person to serve.

....

## SEPARATION OF LEGISLATIVE AND JUDICIAL POWERS

█ The primary separation of powers provisions of the Tennessee Constitution are Article II, Section 1, which states that "the powers of the government shall be divided into three distinct departments: the Legislative, Executive, and Judicial," and Article II, Section 2, which states that "no person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." The doctrine of separation of powers, as set forth in these two sections of the Tennessee Constitution, "is a fundamental principle of American constitutional government." *Underwood v. State*, 529 S.W.2d 45, 47 (Tenn.1975).

The grant of power to the judicial branch is contained in Article VI, § 1, of the Tennessee Constitution, which states that

[t]he judicial power of this state shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace. The Legislature may also vest such jurisdiction in Corporation Courts as may be deemed necessary. Courts to be holden by Justices of the Peace may also be established.

This section, along with Article II, § 1, clearly guarantees the independence of the judiciary. *Summers v. Thompson*, 764 S.W.2d 182, 196 (Tenn.1988) (Drowota, J., concurring).

The independence of the judiciary is also established by Article VI, § 4 of the Tennessee Constitution, which provides:

**Judges of inferior courts.**—The Judges of the Circuit and Chancery Courts, and of other inferior Courts, shall be elected by the qualified voters of the district or circuit to which they are to be assigned. Every Judge of such Courts shall be thirty years of age, and shall before his election, have been a resident of the State for five years and of the circuit or district one year. His term of service shall be eight years.

The defendant contends that the municipal judge of South Carthage should have been elected in compliance with Article VI, § 4, because he was exercising jurisdiction concurrent with the general sessions court, an inferior state court, as opposed to merely exercising jurisdiction over cases arising under municipal ordinances, as a corporation or municipal court. In addition, Barrett argues that since the judge was not elected, but served at the pleasure of the Mayor and Aldermen, the municipal court was without jurisdiction to try his case involving a violation of state law because it was not sufficiently independent of the other branches of government to comply with the separation of powers provisions of the Tennessee Constitution.

South Carthage, on the other hand, contends that Article VI, Section 1, particularly the language that "[t]he Legislature may also vest such jurisdiction in Corporation Courts as may be deemed necessary," expressly permits the legislature to confer concurrent criminal general sessions court jurisdiction upon municipal courts. Given this constitutional provision, South Carthage argues that the municipal judge did not have to be elected in compliance with Article VI, § 4. South Carthage also contends that prior cases have approved of concurrent state court jurisdiction of corporation courts, citing *City of Knoxville ex rel. Roach v. Dossett*, 672 S.W.2d 193 (Tenn.1984); *City of Elizabethton v. Carter County*, 204 Tenn. 452, 321 S.W.2d 822 (1958); and *Moore v. State*, 159 Tenn. 468, 19 S.W.2d 233 (1929).

While it is true that the language of some of our prior cases has appeared to approve of concurrent state court jurisdiction of corporation courts, the issue involved here has been squarely presented in only one prior case. In *State ex rel. Haywood v. Superintendent, Davidson County Workhouse*, 195 Tenn. 265, 259 S.W.2d 159 (1953), the legislature passed an act

allowing the mayor and city council of Nashville to create a Juvenile and Domestic Relations Court. The new court was charged with the duty of enforcing the criminal laws of the state of Tennessee affecting juveniles, and the judge was appointed by the mayor. Under those facts, this Court, speaking through Chief Justice Neil, held that the new court was not a "corporation" court, but an inferior court exercising delegated judicial power within the meaning of the Constitution and authorized to enforce the criminal laws of the state. *Id.*, 195 Tenn. at 270, 259 S.W.2d at 161–62. As a result, the Court held that the judge of the local court had to be elected in compliance with Article VI, § 4 of the Tennessee Constitution. *Id.*, 195 Tenn. at 271, 259 S.W.2d at 162.

In the earlier cases mentioned, the language indicating approval of concurrent state court jurisdiction in municipal courts was either dicta, or the municipal court involved was not exercising inferior court jurisdiction. For example, in *Moore v. State*, 159 Tenn. 468, 19 S.W.2d 233 (1929), this Court stated that "while ordinarily the jurisdiction of municipal courts is limited to cases involving violations of municipal ordinances, it may be extended by the Legislature to cases arising under State law." *Id.*, 159 Tenn. at 469, 19 S.W.2d at 233 (citing Tenn. Const. art. VI, § 1). Although this statement indicates an approval of concurrent jurisdiction, it was made in the context of rejecting a constitutional challenge to a statute giving a police judge the jurisdiction of a justice of the peace, not the jurisdiction of a general sessions court. *Id.*, 159 Tenn. at 470, 19 S.W.2d at 233.

Similarly, in *City of Elizabethton v. Carter County*, 204 Tenn. 452, 321 S.W.2d 822 (1958), this Court held that it was not unconstitutional for an appointed city judge or recorder to exercise "the power, authority and jurisdiction of a justice of the peace in regard to the violation of criminal laws of the State of Tennessee within the corporate limits of the City." *Id.*, 204 Tenn. at 465, 321 S.W.2d at 828. However, in its holding the Court distinguished "[t]he conferring of this limited power of a justice of the peace" upon the city judge or recorder from the inferior court jurisdiction granted to the Juvenile and Domestic Relations Court in *State ex rel. Haywood, supra. Id.*, 204 Tenn. at 463, 321 S.W.2d at 827–28.

In *City of Knoxville ex rel. Roach v. Dossett*, 672 S.W.2d 193 (Tenn.1984), the issue was whether certain statutes gave the municipal courts of the City of Knoxville jurisdiction over state criminal offenses committed within the municipal boundaries of the city. *Id.*, 672 S.W.2d at 193. We held that no concurrent general sessions court jurisdiction existed under the statutes. Although we cited *Moore v. State*, 159 Tenn. 468, 19 S.W.2d 233 (1929), for the proposition that the general assembly may confer state criminal jurisdiction upon such corporation courts if it sees fit to do so, the language was dicta and not necessary to the holding since we had held no such jurisdiction was conferred.

After reviewing the record and the relevant case law, we conclude that the case at bar is controlled by the rationale of *State ex rel. Haywood v. Superintendent, Davidson County Workhouse, supra*, and Justice Drowota's concurring opinion in *Summers v. Thompson*, 764 S.W.2d 182 (Tenn.1988). In *Summers v. Thompson*, this Court held that it was within the power of Soddy–Daisy's Board of Commissioners to terminate a municipal judge at will. *Id.*, 764 S.W.2d at 185–86. We held that the city judge could be terminated, even if the motivation for the termination was questionable, because the particular city court was not vested with any concurrent jurisdiction with an inferior court, and therefore did not exercise constitutional judicial power. *Id.*

Justice Drowota, although concurring, wrote separately, joined by Justice O'Brien, "to make explicit [his] views of the constitutional rule implicit in the holding of the majority." *Id.*, 764 S.W.2d at 188. Justice Drowota found the constitutional rule implicit in the majority's holding to be that

"[i]f the Legislature extends the jurisdiction of [a corporation court] to include enforcement of any State statutes, constitutional judicial power is vested in them under Article VI because the city court then exercises a concurrent jurisdiction with an inferior court." *Id.,* 764 S.W.2d at 193. Therefore, in order to serve "one of the most fundamental principles of American constitutional government, an independent judiciary," *id.,* 764 S.W.2d at 188, Justice Drowota concluded that

> city judges properly exercising any concurrent jurisdiction with an inferior court must be elected for a term of eight (8) years as required by Article VI, Section 4, and may not be removed except pursuant to the Constitution of Tennessee.

*Id.,* 764 S.W.2d at 199.

The inherent logic of this reasoning is demonstrated by examining the factual setting of that case. In *Summers,*

> the Mayor and the members of the Board [of Commissioners] attempted to influence the judicial functions of the city court by attempting to utilize the court to increase city revenue, [and] to persuade [the judge] to impose harsher sentences on first offenders in cases involving driving under the influence.

764 S.W.2d at 183. When the city judge resisted the outside influence on the basis that it encroached upon his judicial discretion, the Mayor and Board decided to fire him "and replace him with a more malleable city judge." *Id.*

This factual scenario aptly demonstrates the danger posed to an independent judiciary and the impartial administration of justice through the exercise of arbitrary power by a separate branch of the government motivated by policy and political concerns inimical to an independent system of justice. Judicial independence is essential to the effective operation of constitutional government.

> As this Court stated at the time of the adoption of the Constitution of 1834, "[t]he independence of the judiciary ought to be anxiously preserved unimpaired; not on account of the individuals who may happen to be judges—they are nothing—but on account of the security of life, liberty, and property of the citizen." *Fisher's Negroes v. Dabbs,* 14 Tenn. 199, 139 (1834).

*Summers v. Thompson,* 764 S.W.2d at 189.

We conclude that judges charged with interpreting the criminal laws of this state should be elected in accordance with Article VI, § 4 of the Tennessee Constitution, in order to assure an independent judiciary free of the political caprice and whims of other government branches. Accordingly, we adopt the reasoning of the concurring opinion in *Summers v. Thompson, supra,* and hold that city judges exercising any concurrent jurisdiction with an inferior court must meet the qualifications of Article VI, Section 4 of the Tennessee Constitution.

In holding that city judges exercising inferior court jurisdiction must meet the qualifications of Article VI, § 4, we are not unmindful of the provision in Article VI, § 1, that "[t]he legislature may also vest such jurisdiction in corporation courts as may be deemed necessary." Nothing in the Constitution or this opinion prevents the legislature from vesting inferior court jurisdiction in the municipal courts of this state. However, if the legislature decides to vest inferior court jurisdiction in a municipal court, Article VI, § 4 requires that those judges be *elected in compliance with that constitutional provision.*

■ Accordingly, because Tenn.Code Ann. § 6–2–403 gives the city judge of a municipality incorporated under a mayor-aldermanic charter inferior court jurisdiction *without requiring the judge to be elected in compliance with Article VI, § 4,* we hold that the statute violates Article II, § 1, and Article II, § 2, of the Tennessee Constitution. In holding the statute unconstitutional under separation of powers principles, we recognize the presumption of constitutionality to be afforded statutes,

*see, e.g., State ex rel. Maner v. Leech,* 588 S.W.2d 534, 540 (Tenn.1979), but we are of the opinion that the presumption has been rebutted in this case.

Although we have held the statute unconstitutional, we note that our holding is of limited applicability because the general assembly responded to this problem by repealing Tenn.Code Ann. § 6-2-403 in 1991. *See* 1991 Tenn.Pub.Acts ch. 154, § 1.

## CONCLUSION

For the reasons stated herein, the judgment of the Smith County Circuit Court is affirmed, and the case is remanded to that court for further proceedings not inconsistent with this opinion. Costs are taxed to the Town of South Carthage, Tennessee.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.