Howard C. BANKSTON, Appellee,

v.

STATE of Tennessee, Appellant.

Supreme Court of Tennessee,
at Knoxville.

Sept. 25, 1995.

Gregory D. Smith, Clarksville, for appellee.

Charles W. Burson, Attorney General & Reporter, Merrilyn Feirman, Assistant Attorney General, Nashville, for appellant.

## OPINION

DROWOTA, Justice.

In this case the State of Tennessee appeals from the Court of Criminal Appeals' reversal of the trial court's order dismissing the defendant's petition for post-conviction relief. The single issue presented for our review is as follows: is a municipal judge exercising concurrent jurisdiction over state criminal offenses prior to this Court's decision in *Town of South Carthage v. Barrett*, 840 S.W.2d 895 (Tenn.1992) a judge *de facto* whose judgments are valid and binding? For the reasons that follow, we reverse the judgment of the Court of Criminal Appeals.

### FACTS AND PROCEDURAL HISTORY

The facts of this case are not disputed. The defendant, Howard Bankston, was convicted three times of driving under the influence (DUI) during the period from 1980 to 1983—twice in the Hamilton County Criminal Court and once in the Chattanooga City Court. Because Tenn.Code Ann. § 55–10–603(2)(A) provides that any person convicted three times of DUI within a period of three years is to be designated an "habitual offender," Bankston was so adjudicated in June 1983. In accordance with Tenn.Code Ann. § 55–10–613, the trial court ordered that his operator's license be revoked.

In June 1987 Bankston pleaded guilty to several counts of driving on a revoked license in violation of Tenn.Code Ann. § 55–10–616. He received a twelve year sentence on these pleas. In March 1990 Bankston filed a petition for post-conviction relief, alleging that he was deprived of the effective assistance of counsel during the proceedings that produced the underlying DUI convictions. The trial court dismissed the petition, however, finding that it was not supported by the evidence. The Court of Criminal Appeals affirmed the judgment, and this Court denied Bankston's application for permission to appeal.

Bankston filed a second post-conviction petition in March 1992; and after the trial court appointed counsel to represent Bankston, this petition was amended in November 1992. This petition challenged the underlying DUI convictions on due process grounds, specifically alleging that the guilty pleas in those cases had been entered involuntarily and without full knowledge of the consequences of the pleas. The trial court dismissed the petition, holding that it was barred by the three year statute of limitations applicable to post-conviction actions. Tenn.Code Ann. § 40–30–102. Bankston appealed from this ruling to the Court of Criminal Appeals, arguing for the first time that since one of his DUI convictions had been rendered by the Chattanooga City Court, our decision in *Town of South Carthage v. Barrett*, 840 S.W.2d 895 (Tenn.1992) required that the conviction be set aside. Bankston further argued that because one of the underlying DUI convictions was invalid, both his subsequent adjudication as a habitual offender and the convictions for violating the habitual offender status were also invalid and should be set aside.

The Court of Criminal Appeals agreed and reversed the trial court's judgment. In its analysis, the Court first cited *Town of South Carthage* for the proposition that the principle of the separation of powers prohibits municipal judges not elected in accordance with Article VI, § 4 of the Tennessee Constitution from exercising concurrent jurisdiction over state criminal offenses. The Court then reasoned that because *Town of South Carthage* had not been released until September 1992, the defendant could not have challenged the constitutionality of his habitual offender status in his first post-conviction petition; and it concluded that our decision in *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992) required that the defendant have the opportunity to raise the claim. Since it was unable to determine from the record whether the Chattanooga City Court had been elected in accordance with the dictates of the Tennessee Constitution, the Court remanded the case to the trial court for an evidentiary hearing on the issue.

We granted the State's application for permission to appeal to clarify the applicability of our *Town of South Carthage* decision.

## ANALYSIS

Our analysis must begin with *Town of South Carthage*. In that case, the defendant was convicted of DUI in the municipal court of the Town of South Carthage (Town), Tennessee. He appealed from this judgment to the Smith County Circuit Court, arguing that the municipal court had no jurisdiction to try cases involving an exercise of state criminal jurisdiction. That court agreed and vacated the defendant's conviction. The Town then appealed to this Court.

We affirmed the trial court's judgment. In our analysis, we first noted that the Town had enacted an ordinance creating the office of municipal judge and that this judge was to be appointed by the Board of Mayor and Aldermen. We also noted that this ordinance conferred upon this judge all the judicial powers of the "Mayor or City recorder"; and that this provision granted the municipal judge some state criminal jurisdiction because of Tenn.Code Ann. 6–2–403,[1] which provided in pertinent part that "the recorder or other proper designated officer shall be vested with concurrent jurisdiction with judges of the court of general sessions, in all cases of violation of the criminal laws of the state." We then reasoned, citing *State ex rel. Haywood v. Superintendent, Davidson County Workhouse*, 195 Tenn. 265, 259 S.W.2d 159 (1953), that the municipal ordinance and § 6–2–403 conflicted with Art. VI, § 4 of the Tennessee Constitution, which provides that "The Judges of the ... inferior courts shall be elected by the qualified voters of the district or circuit to which they are assigned ..." We concluded that this conflict potentially threatened the independence of the judiciary, *see Summers v. Thompson*, 764 S.W.2d 182, 196 (Tenn.1988) (Drowota, J. concurring), and therefore violated the fundamental constitutional principle of the separation of powers. Thus, we affirmed the trial court's judgment.

---

1. Section 6–2–403 was repealed in 1991. 1991 Tenn.Pub.Acts ch. 154, § 1.

Turning to the arguments in this case, the State asserts that the Court of Criminal Appeals erred because *Town of South Carthage* does not automatically nullify every conviction rendered by a municipal judge not elected in accordance with the Tennessee Constitution before that decision was released. Rather, the State argues that a conviction should only be set aside if the defendant can make a showing that the judge's unconstitutional status actually affected the integrity of the proceedings leading to the convictions. The State supports this assertion by arguing that Tennessee law has long recognized that a judge acting under color of law and with the acquiescence of the parties and the public is a *de facto* judge whose rulings bind all interested parties—notwithstanding that such judge's authority may later prove to be illegitimate or even unconstitutional. The State cites several cases in which the *de facto* doctrine has been recognized and applied by this Court, including *Waters v. State ex rel. Schmutzer,* 583 S.W.2d 756, 761 (Tenn.1979); *Country Clubs, Inc. v. City of Knoxville,* 217 Tenn. 104, 395 S.W.2d 789 (1965); *Smith v. Landsden,* 212 Tenn. 543, 370 S.W.2d 557 (1963); *Martin v. Dowling,* 204 Tenn. 34, 315 S.W.2d 397 (1958); and *Giles v. State,* 191 Tenn. 538, 235 S.W.2d 24 (1950).

The defendant responds that *Town of South Carthage* should be construed to automatically void all convictions rendered by municipal judges not elected in accordance with the state constitution, and that these convictions can be attacked in collateral proceedings. He cites as support for his argument *State ex rel. Newsom v. Roberts,* 881 S.W.2d 678 (Tenn.Crim.App.1993), and the case relied upon in *Newsom, Haywood v. Superintendent, supra.*

The difference between judges *de jure* and *de facto* and the general rule concerning the validity of the acts of a judge *de facto* can be summarized as follows:

A judge *de jure* is one who is exercising the office of a judge as a matter of right. In order to become a judge *de jure,* one must satisfy three requirements: he must possess the legal qualifications for the judicial office in question; he must be lawfully chosen to such office; and he must have qualified himself to perform the duties of such office according to the mode prescribed by law.

A judge *de facto* is one acting with the color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes. He differs, on the one hand, from a mere usurper of an office who undertakes to act without any color of right: and on the other hand, from an officer *de jure* who is in all respects legally appointed and qualified to exercise the office ...

48A C.J.S. *Judges* § 2 (1981).

Because the doctrine of *de facto* officers extends to judges, a judge *de facto* is a judge *de jure* as to all parties except the state, and, ... his official acts, before he is ousted from office, are binding on third parties and the public.

*Id.* at § 11.

Initially, the State is correct that Tennessee has long recognized the doctrine of *de facto* officers and judges; it was first introduced into Tennessee jurisprudence in 1859, *see Blackburn v. State,* 40 Tenn. 690 (1859) and *C.D. Venable & Co. v. Curd,* 39 Tenn. 582 (1859), and has been recognized as recently as 1979. *See Waters, supra.* The policy reasons for treating the acts of a *de facto* judge as valid were ably enunciated over 100 years ago by Justice Field of the United States Supreme Court:

The doctrine which gives validity to acts of officers de facto, whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy or necessity, for the protection of the public and individuals whose interests may be affected thereby. Offices are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices and in apparent possession of their powers and functions. For the good order and peace of society their authority is to be respected and obeyed until in some regular mode prescribed by law their title is investigated and determined. It is manifest that endless confusion would result if in every pro-

ceeding before such officers their title could be called into question.

*Norton v. Shelby County,* 118 U.S. 425, 441–42, 6 S.Ct. 1121, 1125, 30 L.Ed. 178 (1886).

Having set forth the basics of the *de facto* officer doctrine and the reasons supporting it, we turn to a case that, although not cited by the parties, we believe to be controlling here. In *Beaver v. Hall,* 142 Tenn. 416, 217 S.W. 649 (1920), the defendants were convicted of transporting and selling intoxicating liquor in the Criminal Court of Tipton County. This court was created by chapter 563 of the Private Acts of 1917, which named the county judge the ex officio judge of the criminal court.

After the defendants' convictions were affirmed by this Court on direct appeal, the defendants filed a petition for habeas corpus relief, arguing that the act creating the criminal court was unconstitutional, and that all proceedings of that court were therefore a nullity. The trial court granted the requested relief, and the sheriff of Tipton County appealed from that judgment to this Court.

In this Court the sheriff argued that the criminal court was a *de facto* court, and that the defendants were prohibited from collaterally attacking the validity of the convictions when they had not objected to the court's jurisdiction at any stage of the proceedings below. The defendants contended, on the other hand, that since the act creating the court was *void ab initio,* the court had absolutely no power to render a judgment. In its analysis, the *Beaver* court initially acknowledged that in *State v. Tipton*[2] the act creating the criminal court had been declared unconstitutional because it required convicted persons to pay a higher tax than other persons convicted of similar crimes in the other counties of the state. However, after surveying the applicable authority and emphasizing that the defendants had acquiesced to the jurisdiction of the criminal court both during the trial and on direct appeal, the *Beaver* court concluded that the defendants could not attack the validity of the convictions in a collateral proceeding. The Court reasoned as follows:

It will be noticed that in the said case of *Norton v. Shelby County,* Mr. Justice Field states that public policy made it necessary for the court to recognize the validity of acts of de facto officers. It seems to us that this same public policy makes it necessary to recognize the proceedings of courts created by the Legislature ... where such courts have the color of legality and regularity, and where their acts and proceedings are acquiesced in by the public and are not objected to by the [defendants].

During the two years in which the criminal court existed it tried many cases. Can it be said of those who were tried and acquitted that, where the statute of limitation has not intervened, or even where they were convicted and have served a jail sentence, they can now be indicted in the circuit court of Tipton County and convicted again for the reason that all former proceedings were an absolute nullity? Can the sheriff who incarcerated defendants by virtue of mittimuses issued to him by said court be held liable for false imprisonment because everything done by said court was absolutely void?

. . . . .

The [defendants] in the instant case have violated the law of the land. They were convicted by a jury of their peers. The highest court of the state has held that this conviction was warranted under the law and the evidence. If the [defendants] are released, they will escape the punishment that the courts have said should be meted out to them. We believe that the same consideration of public policy that led the courts to adopt the de facto doctrine as a means of protecting the rights of the public who deal with officers acting under color of authority should be invoked in this case to protect the acts of a tribunal organized under an act of the Legislature, apparently valid, until there has been a judicial determination of the invalidity of such a court. We are unable to see how such a

2. Unreported decision.

holding could work any hardship. To hold otherwise might result most disastrously. *Beaver,* 142 Tenn. at 433–35, 217 S.W. at 654.

*Beaver* has not been overruled by this Court, and we believe that the holding and supporting rationale of that case are sound and continue to be valid today. Certainly nothing in *Town of South Carthage* itself requires a different result, as the defendant in that case did not acquiesce to the jurisdiction of the municipal court, but asserted that the court had no jurisdiction on direct appeal to the circuit court. *See Ridout v. State,* 161 Tenn. 248, 270, 30 S.W.2d 255, 262 (1930) (recognizing that the *de facto* doctrine will not serve to validate the acts of the court "where the legality of the court is denied"). *See also State v. Householder,* 637 S.W.2d 324 (Mo.App.1982) (holding that if defendant does not object to jurisdiction at proper time, the ground is waived); *People v. Bowen,* 231 Cal.App.3d 783, 283 Cal.Rptr. 35 (1991) (defendant cannot attack court's authority in collateral proceeding); *Rodgers v. Rodgers,* 503 N.E.2d 1255 (Ind.App.1987) (same).

Moreover, we have never accepted the position espoused by the defendant—that the unconstitutionality of the creating statute nullifies all subsequent acts of the court, and that the lack of jurisdiction can be attacked in a collateral proceeding—in any other decision. Admittedly there is some language to this effect in *Haywood, supra,* where we stated in dicta that the judgment of a court exercising state criminal jurisdiction without having been elected in accordance with Article VI, § 4 was void and could be attacked via a petition for habeas corpus. *Haywood,* 195 Tenn. 265, 272–73, 259 S.W.2d 159, 162. However, the only authority cited by the *Haywood* court to support that proposition is *Lynch v. State ex rel. Killebrew,* 179 Tenn. 339, 166 S.W.2d 397 (1942), a case that did not concern the validity of the acts of a *de facto* judge. Instead, in *Lynch* the trial court simply sentenced a 17 year old defendant to a state reform school instead of the jail or workhouse in violation of the applicable statute and thus, in a general sense, exceeded its jurisdiction. Therefore, *Lynch* does not support the sweeping statement made by the *Haywood* court; and because the *Haywood* court clearly contradicts *Bea-*

*ver* in flatly stating that the state criminal judgment of a court not elected in accordance with the Tennessee Constitution is "wholly void," 195 Tenn. at 273, 259 S.W.2d at 162, *Haywood* is overruled to that extent.

As alluded to in *Beaver,* "disastrous" consequences would follow if we were to *automatically* invalidate all acts of municipal judges not elected in accordance with the Tennessee Constitution: hundreds of otherwise valid convictions could potentially be nullified; and those defendants would have to be retried. This would put at risk settled rights, entail a substantial expense to the taxpayers of this state and place an additional load upon our already overburdened judicial system. We cannot countenance such an extreme result, and therefore hold that since the defendant did not challenge the jurisdiction of the municipal court either in that court or on direct appeal, *Town of South Carthage* does not apply.

Because the defendant did not challenge the jurisdiction of the municipal court in that court or on direct appeal, we conclude that the Chattanooga City Court was acting as a *de facto* court when it rendered the conviction. Because the judgment of the Court of Criminal Appeals does not comport with this conclusion, it is hereby reversed.

ANDERSON, C.J., REID, and WHITE, JJ., and GARY R. WADE, Special Judge, concur.