IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
March 21, 2006 Session at Nashville

## WALTER BAILEY, ET AL. v. COUNTY OF SHELBY, ET AL.

**Appeal by Permission from the Court of Appeals, Western Section
Chancery Court for Shelby County
No. CH-04-0550-3   D. J. Alissandratos, Chancellor**

---

**No. W2005-01508-SC-R11-CV - Filed March 29, 2006**

---

In this expedited appeal, this Court is asked to decide two questions of first impression.  The first question is whether a term limit provision contained in a county charter is authorized by Tennessee Code Annotated section 5-1-210(4).  Like the lower courts, we answer this question in the affirmative.  The second question before this Court is whether Tennessee Code Annotated section 5-1-210(4) violates Article VII, section 1, of Tennessee's constitution to the extent that the statute authorizes a  county with a charter form of government to impose term limits upon members of its legislative body.   Unlike the Court of Appeals, we answer this question in the negative. Accordingly, the judgment of the Court of Appeals is reversed.  The judgment of the chancery court is reinstated.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed;
Judgment of the Chancery Court Reinstated**

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

Allan J. Wade, Lori Hackleman Patterson, and Brandy S. Parrish, Memphis, Tennessee, for the appellees, Walter Bailey, Julian Bolton, and Cleo Kirk.

Leo Bearman, Jr. and Jason A. Strain, Memphis, Tennessee, for the appellants, County of Shelby, Shelby County Election Commission, Gregory M. Duckett, Richard L. Holden, Nancye E. Hines, O. C. Pleasant, Jr., and Maura Black Sullivan.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Ann Louise Vix, Senior Counsel, for the Intervenor, State of Tennessee.

# OPINION

## Factual and Procedural Background

The plaintiffs, Walter Bailey, Julian Bolton, and Cleo Kirk, are all currently elected members of the Shelby County Board of Commissioners, which functions as the legislative arm of government for Shelby County. The plaintiffs are candidates for re-election to the seats they currently hold on the Board of Commissioners. The primary election is scheduled to be held in Shelby County on May 2, 2006, with the general election to follow on August 3, 2006. However, the plaintiffs are ineligible to be re-elected due to a provision in Shelby County's Charter that imposes a term limit of two consecutive four-year terms upon those elected to the Board of Commissioners. The plaintiffs were elected to their current positions in 1998 and again in 2002 and, therefore, will have served two consecutive terms of four years when their current terms expire in 2006.

On March 22, 2004, the plaintiffs filed a declaratory judgment action against the County of Shelby, the Shelby County Election Commission, and Shelby County Election Commissioners Gregory M. Duckett, Richard L. Holden, Nancye E. Hines, O.C. Pleasant, Jr., and Maura Black Sullivan, (collectively referred to as "the defendants"), in the Shelby County Chancery Court. The plaintiffs sought a declaration that Article II, section 2.03(G) of Shelby County's Charter, which imposes term limits upon those elected to the Board of Commissioners, is unauthorized under Tennessee Code Annotated section 5-1-210(4) (2005). Section 5-1-210(4) permits counties with chartered forms of government to establish the qualifications of the members of the county's legislative body. The plaintiffs also alleged that the term limit provision in Shelby County's Charter was invalid because section 5-1-210(4) constituted an unlawful delegation of the legislature's power to establish qualifications for elected county officers in violation of Article VII of Tennessee's Constitution. Accordingly, the plaintiffs sought an injunction preventing the defendants from enforcing the charter provision.

The parties stipulated to the facts and filed cross-motions for summary judgment. They agreed that the summary judgment hearing would be treated as a trial on the merits.

On June 9, 2005, the trial court found that Shelby County's term limits relate to the qualifications for holding office and, therefore, the charter provision imposing the term limits was authorized by Tennessee Code Annotated section 5-1-201(4). The trial court also ruled that the charter provision was not the product of an unlawful delegation of the legislature's power to establish qualifications for elected county officers in violation of Article VII of Tennessee's constitution. Thus, the trial court granted summary judgment to the defendants and denied injunctive relief to the plaintiffs.

On June 23, 2005, the plaintiffs appealed the decision to the Court of Appeals and simultaneously filed a motion in this Court pursuant to Tennessee Code Annotated section 16-3-201(d) (1994) requesting that we assume jurisdiction of the appeal. We denied the motion. The plaintiffs subsequently moved the Court of Appeals to grant an expedited appeal to assure that the

issues would be decided in advance of the election. The Court of Appeals granted expedited review, vacated the grant of summary judgment to the defendants, awarded summary judgment to the plaintiffs, and enjoined the defendants from enforcing the term limit provision of the charter. The intermediate appellate court unanimously concluded that the charter's imposition of term limits was authorized by section 5-1-210(4). The intermediate court, however, was divided on whether the charter provision was the result of an unconstitutional delegation of the legislature's authority to prescribe the qualifications of the members of county legislative bodies under Article VII of Tennessee's constitution. A majority of the Court of Appeals concluded that it was.

On December 22, 2005, the defendants filed an application for permission to appeal under Rule 11 of the Tennessee Rules of Appellate Procedure. This Court granted review and set an expedited schedule for briefing and oral argument. After a careful review of the record and applicable law, we conclude that the chancery court correctly determined that the charter provision at issue is authorized by section 5-1-210(4) and, further, that section 5-1-210(4) as applied to this case does not violate Article VII of Tennessee's constitution.

## Standard of Review

Because this case is before the Court on the trial court's grant of summary judgment, we are guided by well-established legal principles. We must review the record without attaching any presumption of correctness to the trial court's judgment. See Godfrey v. Ruiz, 90 S.W.3d 692, 695 (Tenn. 2002). Similarly, because the resolution of this appeal involves questions of law raised by the parties' motions for summary judgment, the standard of review is de novo without any presumption of correctness given to the legal conclusions of the courts below. Taylor v. Fezell, 158 S.W.3d 352, 357 (Tenn. 2005). Further, we note that when considering the constitutionality of a statute, we start with a strong presumption that acts by the legislature are constitutional. See Osborn v. Marr, 127 S.W.3d 737, 740-41 (Tenn. 2004); West v. Tennessee Housing Dev. Agency, 512 S.W.2d 275, 279 (Tenn. 1974). Any reasonable doubt about whether a statute is constitutional must be resolved in favor of its constitutionality. See Blankenship v. Old Republic Ins. Co., 539 S.W.2d 23, 27 (Tenn. 1976). Thus, the plaintiffs in the present case have a heavy legal burden in challenging the constitutionality of section 5-1-210(4). See West, 512 S.W.2d at 279.

## Analysis

## I.

The crux of this case involves Article VII, section 1, of Tennessee's constitution, which states in pertinent part:

**County government – Elected officers – Legislative body – Alternate forms of government. –** The qualified voters of each county shall elect for terms of four years a legislative body, a county executive, a Sheriff, a Trustee, a Register, a County

Clerk and an Assessor of Property. Their qualifications and duties shall be prescribed by the General Assembly . . . .

. . . Any county organized under the consolidated government provisions of Article XI, Section 9, of this Constitution shall be exempt from having a county executive and a county legislative body as described in this paragraph.

The General Assembly may provide alternate forms of county government including the right to charter and the manner by which a referendum may be called. The new form of government shall replace the existing form if approved by a majority of the voters in the referendum.

Shortly after the adoption of Article VII, section 1, this Court recognized that Tennessee's constitution provides for three types of county government. The first type includes a governmental structure "wherein the basic units of government are the county executive and county legislative body" under the first paragraph of section 1 of Article VII. State ex rel. Maner v. Leech, 588 S.W.2d 534, 537 (Tenn. 1979). The second type of county government contemplated by Article VII is a consolidated form of government, commonly known as a metropolitan government, as authorized under the second paragraph of Article VII. Id. The third form of county government is an alternate form of government created by the legislature. Id. An alternative form of county government, authorized under the third paragraph of Article VII, may be created by the legislature "without regard to the general type established in Article VII," provided the legislature's action is ratified by referendum. Id. If approved by a majority of voters, the alternate form of county government replaces the existing form of government. See Leech v. Wayne County, 588 S.W.2d 270, 272 (Tenn. 1979).

Acting pursuant to Article VII, section 1, the legislature has authorized counties to adopt a charter form of government as an alternate form of government. See Tenn. Code Ann. § 5-1-201(a) (2005). The charter form of government "shall result in the creation and establishment of an alternate form of county government to perform all the governmental and corporate functions previously performed by the county." Tenn. Code Ann. § 5-1-203(b) (2005). Echoing the language of the third paragraph of Article VII, the legislature has declared that "[s]uch charter form of government shall replace the existing form if approved by a majority of the voters in a referendum." Tenn. Code Ann. § 5-1-203(c). Pursuant to these statutes, Shelby County adopted a charter form of government effective September 1, 1986.

State law requires that a county operating under a charter form of government, such as Shelby County, provide for a legislative branch of government. Tenn. Code Ann. § 5-1-210(3). The Board of County Commissioners is the legislative branch of Shelby County's government. As noted above, the plaintiffs are elected members of that body.

State law also requires that counties operating under a charter form of government provide for the "size, method of election, **qualification for holding office**, method of removal, and

procedures of the county legislative body . . . ." Tenn. Code Ann. § 5-1-210(4) (emphasis added). In 1994, Shelby County's Charter was amended by a referendum of the voters of Shelby County to include section 2.03(G), which provides as follows:

> No County Mayor nor any member of the Board of County Commissioners shall be eligible to be elected or to hold the office of County Mayor or County Commissioner for more than two consecutive four-year terms. Provided, however, if an individual is appointed to fill an unfilled term either for Mayor or County Commissioner, this term shall not be counted as part of the two consecutive elected terms.

The trial court noted that the referendum on section 2.03(G) was approved by over 80% of the voters of Shelby County. It is unclear from what source the trial court derived this information, but the parties do not dispute its accuracy. The plaintiffs do, however, characterize the referendum vote as "ill-advised." Of course, an "ill-advised" vote does not rise to the level of a constitutional defect. In other words, the wisdom of the referendum vote is not an issue before this Court.

The plaintiffs argue that section 5-1-210(4) does not authorize the imposition of term limits upon members of a county legislative body. According to the plaintiffs, term limits are not a "qualification for holding office" as that phrase is used in section 5-1-210(4). The plaintiffs further contend that Article VII, section 1 of Tennessee's constitution prohibits limiting the number of terms a county legislative official may serve. The plaintiffs reason that because Article VII provides that members of county legislative bodies shall be elected for "terms of four years," any limitation on the number of terms is invalid. Thus, the plaintiffs construe Article VII as establishing terms of four years with no limit.[1] We disagree with the plaintiffs' interpretation of Article VII.

As noted above, Tennessee Code Annotated section 5-1-210(4) authorizes a chartered county to establish the qualifications of the members of its legislative body. Consistent with this statute–which according to section 5-1-201(b) must be "liberally construed as a utilization of the constitutional power granted by" Article VII–the voters of Shelby County have determined that their county commissioners should not serve more than two consecutive four-year terms. Although it is true that Article VII states that county officials shall be elected for "terms of four years," we do not construe this phrase to mean that such officials must be capable of being elected to more than one term. Rather, the phrase "terms of four years" merely refers to the duration of each term. There is nothing in the language of the constitution to prevent a county from placing a limit on the number of terms that may be served. Accordingly, like the courts below, we find that term limits are a "qualification for holding office" within the meaning of section 5-1-210(4). See U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779 (1995) (term limits placed upon members of Congress amount to a qualification for holding office). It follows that section 2.03(G) of Shelby County's Charter is authorized by section 5-1-210(4).

---

[1]The Attorney General has filed a brief on behalf of the Shelby County Election Commission adopting the plaintiffs' position that section 5-1-210(4) does not authorize the imposition of term limits upon members of a county legislative body.

As further support for their position, the plaintiffs rely upon the following statement by a delegate to the Constitutional Convention of 1977 where Article VII was amended to its present form: "The committee considered certain limitations on terms and nearly unanimously rejected any such limitation on any office." It seems to us that this statement suggests that a decision was made not to impose terms limits in the constitution itself, but to leave that power with the people to decide for themselves. If the delegates had wanted to prohibit term limits as the plaintiffs contend, the delegates could have easily added language to that effect.

## II.

Having determined that a term limit provision in a county charter is authorized by Tennessee Code Annotated section 5-1-210(4), we turn to whether section 5-1-210(4) violates Article VII, section 1, of Tennessee's constitution. Relying upon the first paragraph of Article VII, the plaintiffs argue that only the legislature may prescribe the qualifications of elected officials listed in Article VII. Therefore, according to the plaintiffs, section 5-1-210(4) amounts to an unconstitutional delegation of the legislature's authority to establish the qualifications of elected officials. See Kee v. Parks, 283 S.W. 751, 753 (Tenn. 1926) (only where the constitution authorizes the delegation may the legislature delegate its law-making power to other entities).

A majority of the Court of Appeals agreed with the plaintiffs, holding that insofar as the statute permits the qualifications of elected county officials to be prescribed locally, section 5-1-210(4) is unconstitutional. The majority reasoned that no language in Article VII, section 1, authorizes the legislature to delegate its power to establish the qualifications of elected officials. The majority determined that, although the third paragraph of Article VII allows the legislature to provide for alternative forms of county government, any such government had to conform to the first paragraph of Article VII, i.e., "qualifications and duties [of elected county officials] shall be prescribed by the General Assembly." Accordingly, the majority held that by permitting a chartered county to determine the qualifications of members of its legislative body, section 5-1-210(4) was unconstitutional. We disagree.

As noted above, Article VII, section 1, contemplates the creation of three *distinct* forms of county government. See State ex rel. Maner, 588 S.W.2d at 537. Article VII, section 1, clearly provides that one of these, an alternate form of government, "shall replace the existing form [of government] if approved by a majority of the voters." There can be little argument that replace means to put in place of or to substitute for what was in existence. See Black's Law Dictionary 1299 (6th ed. 1990). We construe the third paragraph of Article VII, section 1, to mean what it says when it provides for the creation of a new form of county government that replaces the existing form of government. Stated differently, we reject the notion that an alternative government formed under the third paragraph of Article VII must conform to the language in the first paragraph of Article VII, i.e., "qualifications and duties [of elected county officials] shall be prescribed by the General Assembly" only. To hold otherwise would mean that a county could adopt a new form of government that is controlled by the old form of government that the new one replaced. We do not believe that Article VII contemplates such an unworkable anomaly. See State ex rel. Maner, 588

S.W.2d at 540 ("Our courts have repeatedly held that absurdities should be avoided [and] that the courts should not place upon a statute a construction which would work to the prejudice of the public interest.").

In addition, we note that unlike the first paragraph of Article VII, the third paragraph of Article VII does not contain any prohibition on authorizing a chartered county to set the qualifications for members of its legislative body. To the contrary, Article VII grants broad authority to a county to go so far as to *replace* its existing government in favor of an alternate government, provided the people approve. It follows that a chartered county, as authorized by Article VII and statutes enacted by the legislature, may establish the qualifications of the members of its own legislative body. See Southern Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 713 (Tenn. 2001) (chartered counties "possess broad authority for the regulation of their own local affairs").

Furthermore, we note that Article I, section 1, of Tennessee's constitution provides that the people have an "unalienable and indefeasible right to alter, reform, or abolish the government in such manner as they may think proper." The constitution is the truest expression of the will of the people, and it is their intent in adopting a constitutional provision that must prevail. See Williams v. Carr, 404 S.W.2d 522, 526 (Tenn. 1966). Accepting the plaintiffs' position in this case would require us to ignore the fundamental principle of self-government embodied in Article I, section 1. This we are not willing to do. Instead, we continue to adhere to the principle that "the constitution does not mandate a uniform structure of county governments across the state. It specifically authorizes legislation creating different forms of local" government, and the "General Assembly has very broad powers and discretion" in this regard. Leech, 588 S.W.2d at 272. Although the plaintiffs argue that such an approach to Article VII "invites chaos," we are aware of no evidence to support such a conclusion, and none has been cited to us.

Finally, the plaintiffs cite the debates of the Constitutional Convention of 1977 and various Attorney General Opinions in arguing that the county officers identified in paragraph one of Article VII could not be abolished by a government formed under paragraph three of Article VII. Further, the plaintiffs rely upon Tennessee Code Annotated section 5-1-210(12) for the proposition that the "duties" of elected county officers may not be "diminished" by chartered counties unless the legislature authorizes it. As we understand it, however, this case is not about Shelby County having abolished the officials identified in the first paragraph of Article VII. Nor does this case involve an attempt to diminish the duties of elected county officials. Regardless, the plaintiffs' arguments are premised upon their view that alternative governments formed under the third paragraph of Article VII are controlled by the first paragraph of Article VII. As explained above, they are not.

In short, we are persuaded that the plaintiffs have failed to carry their heavy burden of establishing that section 5-1-210(4) is constitutionally defective by allowing chartered governments to set the qualifications for their legislative officials. In reaching this conclusion, we have endeavored to remain true to the established rule of statutory construction that where one reasonable interpretation would render a statute unconstitutional and another reasonable interpretation would

render it valid, courts are to choose the construction which validates the statute.  See Mitchell v. Mitchell, 594 S.W.2d 699, 702 (Tenn. 1980).  Today's decision is also consistent with our observation made shortly after Article VII was modified to its present form in 1978 that "[t]he powers which the General Assembly previously possessed respecting local governments were reinforced and strengthened as to county governments by the 1978 amendment to Article VII" permitting alternate forms of local government.  Leech, 588 S.W.2d at 274.

Before concluding, we must address a request made by the defendants to  postpone the election process because the defendants "believe" that Julian Bolton has decided not to seek re-election and, further, Walter Bailey and Cleo Kirk will face opposition in the primary election but not in the general election.  These matters are not part of the record before this Court and we decline to address them.  Nor are we inclined, in the absence of a compelling reason, to interfere with the election process as scheduled.  Therefore, the defendants' request for an order delaying the election is denied.

## Conclusion

For the reasons stated above, we hold that section 2.03(G) of Shelby County's Charter is authorized by Tennessee Code Annotated section 5-1-210(4).  We also hold that Tennessee Code Annotated section 5-1-210(4) does not violate Article VII, section 1, of Tennessee's constitution to the extent that the statute authorizes a chartered county to impose terms limits upon members of its legislative branch.  Accordingly, the judgment of the Court of Appeals is reversed and the judgment of the chancery court is reinstated.  This opinion is not subject to rehearing under Rule 39 of the Tennessee Rules of Appellate Procedure, and the Clerk is directed to immediately issue the mandate.  Costs are taxed to the plaintiffs, Walter Bailey, Julian Bolton, and Cleo Kirk, and their sureties, for which execution may issue if necessary.

_____
WILLIAM M. BARKER, CHIEF JUSTICE