# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 16, 2008 Session

## STATE OF TENNESSEE ex rel. BEE DESELM, ET AL. v. DIANE JORDAN, ET AL.

### Appeal from the Chancery Court for Knox County
### No. 167799-2     Daryl R. Fansler, Chancellor

---

### No. E2007-00908-COA-R3-CV - FILED SEPTEMBER 12, 2008

---

The plaintiffs brought this action seeking the removal of several Knox County officials from office on the ground that they were ineligible for their positions by operation of the term limits provision of the Knox County Charter. Six days after the plaintiffs filed their complaint, the Tennessee Supreme Court heard arguments in the case of *Jordan v. Knox County*. The Supreme Court in its *Jordan* opinion, released on January 12, 2007, decided all issues raised in the case before us. Accordingly, we affirm the trial court's dismissal of the plaintiffs' complaint on the basis of mootness.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Herbert S. Moncier, Knoxville, Tennessee, for the Appellants, State of Tennessee and Knox County, Tennessee, ex rel. Bee DeSelm, James Gray, Carl Seider, H.R. DeSelm, Jennifer Arthur, William S. Collins, Donna Brien, David Havercom, Mary Hook, Susan Jenkins, and Miriam Levering.

James L. Murphy and Austin L. McMullen, Nashville, Tennessee, for the Appellee, Knox County Election Commission.

John E. Owings, Knox County Law Director, and Martha Haren McCampbell, Deputy Law Director, Knoxville, Tennessee, for the Appellees, Diane Jordan, Billy Tindell, John Griess, Mark Cawood, John R. Mills, Phil Guthe, and Larry Clark.

Robert H. Watson, Jr., Knoxville, Tennessee, for the Appellee, Timothy Hutchison.

**OPINION**

## *I. Background*

This case is one of many in a long-running controversy regarding the structure, composition, and election procedures of the Knox County government. Shortly before this action was filed, three of the plaintiffs in this action filed a declaratory judgment action asking the court to affirm the validity of the Knox County charter (and presumably the effectiveness of term limits), among other things. That case, which was dismissed simultaneously with the present action by the trial court in a single memorandum opinion and judgment, came to be known as *DeSelm I*, and this case as *DeSelm II*. The plaintiffs appealed the decision in both *DeSelm I* and *DeSelm II,* and this court did not grant a motion to consolidate the appeals. In the *DeSelm I* opinion, *State ex rel. DeSelm v. Knox County*, No. E2007-00913-COA-R3-CV, 2008 WL 3896763 (Tenn. Ct. App. E.S., filed Aug. 22, 2008), Judge Susano, writing for this court, ably set forth the lengthy and convoluted history that provides the factual and procedural background for both *DeSelm I* and the present case. In the following paragraphs, therefore, we quote extensively from the background section of *DeSelm I,* with additions and deletions as appropriate to reflect the distinctions between *DeSelm I* and *DeSelm II.*

In accordance with Article 7, § 1 of the Tennessee Constitution and Tenn. Code Ann. § 5-1-201 *et seq.* (Supp.2007), counties in Tennessee may be organized under either the standard, state form of county government, or the alternate, charter form of county government, sometimes called "home rule." In 1988, the voters of Knox County by referendum adopted the charter form of government. Then in 1994, by another referendum, county voters approved an amendment to the charter, subjecting various county officials to term limits. However, in 1995, the Tennessee Attorney General issued an opinion stating that such term-limit provisions in county charters are unconstitutional. Tenn. Op. A.G. No. 95-007, 1995 WL 69246 at *1 (Feb. 15, 1995). Officials in Knox County thus proceeded on the assumption that the purported term limits were ineffective. *DeSelm I*, 2008 WL 3896763 at *1.

That assumption remained officially uncontradicted until March 29, 2006, when the Tennessee Supreme Court ruled that term limits in the Shelby County charter did *not* violate the state constitution. *Bailey v. County of Shelby,* 188 S.W.3d 539, 544 (Tenn. 2006). That ruling seemed to revive the long-dormant issue of Knox County term limits as well, and raised the specter that some then-serving county officials might already be term-limited, and might therefore be ineligible for re-election in 2006. *DeSelm I*, 2008 WL 3896763 at *1.

*Bailey* was decided some six weeks after the deadline to qualify for the May 2, 2006 Knox County primary election had passed. A number of potentially term-limited county officials – twelve commissioners and several countywide officers – were on the primary ballot, and it was too late to remove their names. However, county elections officials began making contingency plans for the August 3, 2006 general election, in the event of a court decision applying *Bailey* to Knox County

and thus disqualifying any term-limited candidates who might win their primary races on May 2. *Id.*

Then the controversy took an unexpected twist. In the aftermath of *Bailey,* one of the plaintiffs herein filed papers seeking to enforce the term limits in the Knox County charter. That case, styled *Gray v. Hutchison,* Knox Co. Chancery No. 166649-1, was dismissed on April 5, 2006, for lack of standing. More significantly, the trial court opined in dicta that the Knox County charter might be invalid in its entirety*,* which would of course invalidate the term limits as well. *Id.*

The plaintiffs filed suit in *DeSelm I* on April 19, 2006, asking the trial court for a declaratory judgment contradicting the *Gray* dicta and affirming the charter's validity (and thus, presumably, the term limits' effectiveness). Meanwhile, on the same day that *DeSelm I* was filed, five county commissioners filed a separate lawsuit, which became known as *Jordan v. Knox County,* Knox Co. Chancery No. 166799-1. The commissioners, who stood to be disqualified if the charter (and thus the term limits) were to be ruled valid, sought to have the charter declared *invalid,* thus essentially converting the *Gray* dicta into binding precedent. *DeSelm I*, 2008 WL 3896763 at *2.

Approximately two weeks later, on May 2, 2006, the Knox County primary election occurred. Most of the possibly term-limited officials won their primaries, thus potentially qualifying them for the August general election – pending a decision on the charter. These officials won another victory, in the courtroom, when the *Jordan* trial court issued its ruling on June 5, 2006. The trial court in *Jordan* essentially adopted the *Gray* dicta, holding the Knox County charter invalid and thus invalidating the term limits as well. This ruling meant that all of the May primary winners, including those who could potentially have been disqualified as term-limited, would appear on the August 3, 2006, general election ballot. Meanwhile, the Supreme Court exercised its reach-down authority, *see* Tenn. Code Ann. § 16-3-201(d) (Supp. 2007), and took appellate jurisdiction of the *Jordan* case. Oral argument was scheduled for September 6, 2006 – a month and three days after the general election. *Id.*

Eight possibly term-limited county commissioners were re-elected on August 3, 2006, as were a possibly term-limited sheriff, county clerk, register of deeds, and trustee. On August 30, 2006, three of the plaintiffs in *DeSelm I* filed the present action, seeking to have the May and August elections involving term-limited officials elections declared void, the winners ousted, and new elections held. *Id.* at *3.

On January 12, 2007, the Supreme Court released its opinion in *Jordan v. Knox County,* 213 S.W.3d 751 (Tenn. 2007). The Supreme Court reversed the trial court in part and affirmed in part, holding that the Knox County charter was not a valid de jure charter because it did not comply with the enabling legislation for instituting a charter form of government, but that Knox County had been operating under a valid de facto government created by the charter. *Jordan,* 213 S.W.3d at 774, 777.

The ***Jordan*** Court also held that the term limits amendment was valid and applicable to "all elected Knox County Government officials except for the court clerks and the school board member[s]." ***Id.*** at 755. This ruling settled any controversy created by the ***Gray*** dicta regarding term limits, which was contradicted by the Supreme Court. The ruling also meant that the twelve previously-referenced officials, who had been re-elected four months earlier, were in fact term-limited and therefore ineligible to serve. However, the Court stated:

> The terms of these public servants who are ineligible for another term do not, however, end with the filing of this opinion. Pursuant to article VII, section 5 of the Tennessee Constitution, every officer shall hold office until a successor is elected or appointed and qualified. In order to assure the continuous representation of all of the people of Knox County in local governmental affairs and as a means of preserving, without interruption, the continuation of essential governmental services, those county commissioners and state constitutional officers otherwise precluded from holding the offices to which they were recently elected may continue as de facto officers until their successors are named in accordance with law.[FN13]  *See* ***Hogan v. Hamilton***, 132 Tenn. 554, 179 S.W. 128, 129 (1915); *see also* ***Cook v. State***, 91 Ala. 53, 8 So. 686, 688 (1890) (holding that a circuit clerk who was no longer qualified to serve was a de facto officer until his successor qualified).
>
> FN13. Article VII, section 2 provides that "[v]acancies in county offices shall be filled by the county legislative body, and any person so appointed shall serve until his successor is elected at the next election occurring after the vacancy is qualified." See ***State ex rel. Winstead v. Moody***, 596 S.W.2d 811, 812 (Tenn.1980).

***Jordan***, 213 S.W.3d at 784. As can be seen, this ruling states that the "county legislative body" – in Knox County, the county commission – had the right to appoint interim replacements for the twelve term-limited officers, eight of whom were members of the 19-person commission itself. The commission did so on January 31, 2007.

On March 5, 2007, proceedings in both ***DeSelm I*** and ***DeSelm II***, which had essentially been put on hold while the ***Jordan*** case was litigated, resumed. A hearing was held on that date on the various outstanding motions in the cases, including motions to dismiss that had been filed in this case by the various defendants. The trial court granted these motions to dismiss. The trial court held, in a memorandum opinion disposing of both ***DeSelm I*** and ***DeSelm II*** simultaneously, that it had no authority to order new elections and that both cases were otherwise moot because of ***Jordan***. The plaintiffs timely appealed both cases.

-4-

## II. Issue Presented

The issue presented in this appeal is whether the trial court erred in dismissing the Plaintiffs' action because it has been rendered moot by the Supreme Court's *Jordan* decision and subsequent events including the election and installation of new Knox County officials in the positions of those challenged by this lawsuit.

### III. Analysis

#### A. Standard of Review

The issue of whether the trial court erred in granting the defendants' motion to dismiss for mootness is one of law, and thus our standard of review is *de novo* with no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn. 1993); *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely,* 182 S.W.3d 333, 338-39 (Tenn. Ct. App. 2005) ("[d]etermining whether a case is moot is a question of law"); *DeSelm I*, 2008 WL 3896763 at *4.

#### B. Mootness Doctrine

The trial court dismissed the plaintiffs' complaint in this action upon its determination that the issues raised by the pleadings were moot and that there remained no continuing justiciable controversy. A case must maintain its justiciability throughout the entire course of the litigation in order to avoid being dismissed as moot. *State ex rel. Cunningham v. Farr*, No. M2006-00676-COA-R3-CV, 2007 WL 1515144 (Tenn. Ct. App. M.S., filed May 23, 2007). In *Cunningham*, this court discussed the general principles guiding Tennessee courts in their application of the mootness doctrine and the justiciability requirement, stating as follows:

> To be justiciable, a case must involve presently existing rights, live issues that are within a court's power to resolve, and parties who have a legally cognizable interest in the resolution of these issues. A case is not justiciable if it does not involve a genuine, existing controversy requiring the adjudication of presently existing rights. *State v. Brown & Williamson Tobacco Corp.,* 18 S.W.3d 186, 193 (Tenn. 2000); *State ex rel. Lewis v. State,* 208 Tenn. 534, 537, 347 S.W.2d 47, 48 (1961); *Ford Consumer Fin. Co. v. Clay,* 984 S.W.2d 615, 616 (Tenn. Ct. App.1998).
>
> The requirements for litigation to continue are essentially the same as the requirements for litigation to begin. *Alliance for Native Am.*

***Indian Rights in Tenn., Inc. v. Nicely,*** 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005). Thus, cases must remain justiciable throughout the entire course of the litigation, including the appeal. ***State v. Ely,*** 48 S.W.3d 710, 716 n.3 (Tenn. 2001); ***Ford Consumer Fin. Co. v. Clay,*** 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998); 1 Rotunda & Nowak § 2.13, at 268-69. A moot case is one that has lost its justiciability because it no longer presents a present, live controversy. ***McCanless v. Klein,*** 182 Tenn. 631, 637, 188 S .W.2d 745, 747 (1945); ***Hurd v. Flores,*** 221 S.W.3d 14, ----, 2006 WL 1641520, at *13 (Tenn. Ct. App. 2006); ***County of Shelby v. McWherter,*** 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996). Thus, a case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party. ***Knott v. Stewart County,*** 185 Tenn. 623, 626, 207 S.W.2d 337, 338-39 (1948); ***Ford Consumer Fin. Co. v. Clay,*** 984 S.W.2d at 616; ***Massengill v. Massengill,*** 36 Tenn.App. 385, 388-89, 255 S.W.2d 1018, 1019 (1952).

Determining whether a case or an issue has become moot is a question of law. ***Hurd v. Flores,*** 221 S.W.3d at ----, 2006 WL 1641520, at *13; ***Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely,*** 182 S.W.3d at 338-39. Thus, unless the case fits within one of the recognized exceptions to the mootness doctrine,[FN8] the courts will ordinarily vacate the judgment and remand the case to the trial court with directions that it be dismissed. ***Ford Consumer Fin. Co. v. Clay,*** 984 S.W.2d at 617; ***McIntyre v. Traughber,*** 884 S.W.2d at 138.

FN8. The courts have recognized several exceptions to the mootness doctrine. Exercising their discretion, ***McIntyre v. Traughber,*** 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994); ***Dockery v. Dockery,*** 559 S.W.2d 952, 955 (Tenn. Ct. App. 1977), they have declined to dismiss cases when the issue involves important public interests, when the issue is important to the administration of justice, and when an issue is capable of repetition but will evade judicial review.[1] ***State ex rel Anglin v. Mitchell,*** 596 S.W.2d 779, 782 (Tenn. 1980); ***New Riviera Arts Theatre v. State,*** 219 Tenn. 652, 658, 412 S.W.2d 890, 893 (1967); ***LaRouche v. Crowell,*** 709 S.W.2d 585, 587-88 (Tenn. Ct. App. 1985).

***Cunningham***, 2007 WL 1515144, at *2-3.

---

[1]The plaintiffs in the present case do not argue that any of the exceptions to the mootness doctrine apply.

As we stated in **DeSelm I,** "[t]he governmental controversies underlying this case have continued apace in the 17 months since the final judgment, and recent developments – which have come to our attention by way of motions to consider post-judgment facts hereby granted by us – are significant to our mootness analysis." **DeSelm I**, 2008 WL 3896763 at *4. At the Knox County Commission meeting of January 31, 2007, interim replacements for the twelve term-limited officers were appointed. **Id.** Those appointments were eventually invalidated in yet another separate lawsuit by some of the plaintiffs in this case, among others, as being in violation of the Open Meetings Act, Tenn. Code Ann. § 8-44-101, *et seq.* (Supp. 2007). **Id.** This ruling, in **McElroy v. Strickland,** Knox Co. Chancery No. 168933-2, was announced on October 5, 2007. **Id.** The court in that case denied a motion asking it to order a special election, stating it lacked authority to do so. Instead, the commission made a *second* set of interim appointments on February 20, 2008, ostensibly conducted in compliance with the Open Meetings Act. **Id.** Meanwhile, the process of electing permanent replacements, who will fill out the remainder of the ousted officials' four-year terms, began with the primary election of February 5, 2008, and concluded with the general election of August 7, 2008. **Id.** The officials elected on August 7, 2008 were sworn in and installed on August 29, 2008.

The plaintiffs sought the following relief in this action, as quoted from their complaint: (1) "removal and forfeiture of office of [the] officers who were ineligible to be elected to their offices in August 2002 effective September 1, 2002 because of Knox County Charter Term Limits"; (2) "to declare void, or to void, actions taken by Defendants in the unlawful exercise of said offices"; (3) "a declaratory judgment that Diane Jordan, Mary Lou Horner and John Mills [three of the commissioners] were ineligible to be lawfully appointed to the Knox County Review Committee; that the Knox County Charter Review Committee was not lawfully constituted; that the votes of [the three commissioners] constituted an unlawful exercise of office; and that the actions of the Charter Review Committee are void"; (4) that the court "issue mandatory injunctive relief in aide of its judgment on this complaint"; and (5) for "damages including attorney fees and cost." The plaintiffs amended their complaint to include a request that the trial court declare the Knox County primary election of May 3, 2006, and the general election of August 3, 2006, void, and that the trial court issue an order to the Knox County Election Commission to hold a special election qualifying period, special primary election, and special general election.

In light of the facts that all of the officials that this action sought to have removed as term-limited no longer hold office, that their replacements have been ostensibly duly elected and inaugurated in accordance with Tennessee law, and that the Supreme Court clearly held in **Jordan** that the officials found to be term-limited in that case legitimately held office as de facto officers until their successors were named in accordance with law, all of the issues raised by the complaint are now moot.

Regarding the allegations in the complaint that certain of the actions taken by the county commission are void because some of the commissioners were ineligible to hold office because of

the term limits charter provision, the ***Jordan*** Court, as already quoted above, stated that "[i]n order to assure the continuous representation of all of the people of Knox County in local governmental affairs and as a means of preserving, without interruption, the continuation of essential governmental services, those county commissioners and state constitutional officers otherwise precluded from holding the offices to which they were recently elected *may continue as de facto officers* until their successors are named in accordance with law." ***Jordan***, 213 S.W.3d at 784 (emphasis added). The Supreme Court clearly held that the defendant officers involved in this controversy had legitimately held, and would legitimately continue to hold, office "until their successors are named in accordance with law." ***Id.***

Although the process was not always a smooth one, as demonstrated by the voluminous litigation it has spawned, the successors have now been named, elected, and inaugurated. As we stated in ***DeSelm I,*** "it is abundantly clear from the above-stated facts, including post-judgment facts, that the validity of the 2006 elections is itself also a moot point . . . ." The following observation from ***DeSelm I*** is equally applicable to the present case:

> The whole thrust of the plaintiffs' argument has been that the interim appointments authorized by ***Jordan*** should have lasted only until a special, or "new," election could be held, rather than until the August 7, 2008, election. Even if the plaintiffs could prove this – which we doubt, particularly given that the Supreme Court had every opportunity to so hold in ***Jordan****,* yet did not do so – *it would be impossible to fashion any meaningful relief at this point*, as permanent replacements have already been elected[.]

***DeSelm I***, 2008 WL 3896763, at *5 (emphasis added). Regarding the plaintiffs' request that the trial court (and now this court) declare the 2006 elections "void," plaintiffs' counsel at oral argument, while acknowledging that the general election was then scheduled to occur in less than two months, stated, "I'm asking you to do that because it's not moot at this moment . . . and . . . because in the future, when these matters arise at the last minute . . . we have to be prepared next time to have our courts step in[.]" It has been clearly held that this court is neither inclined nor authorized to issue an advisory opinion in the absence of a live, justiciable controversy. ***State v. Brown & Williamson Tobacco Corp.***, 18 S.W.3d 186, 193 (Tenn. 2000); ***Super Flea Market of Chattanooga, Inc. v. Olsen***, 677 S.W.2d 449, 451 (Tenn. 1984); ***Parks v. Alexander***, 608 S.W.2d 881, 892 (Tenn. Ct. App. 1980). The claim "for attorney fees and cost" must also be denied because there is no underlying basis for recovery contained in the pleadings in this case.

*IV. Conclusion*

For the aforementioned reasons, the judgment of the trial court dismissing the complaint as moot is affirmed. Costs on appeal are assessed to the Appellants, State of Tennessee and Knox County, Tennessee, ex rel. Bee DeSelm, James Gray, Carl Seider, H.R. DeSelm, Jennifer Arthur, William S. Collins, Donna Brien, David Havercom, Mary Hook, Susan Jenkins, and Miriam Levering.

_____
SHARON G. LEE, JUDGE